ONEIDA NAT. BANK v. GUENARD, SPEED & CLEMENS et al.   (No. 8726.)

(Court of Civil Appeals of Texas. Galveston. Dec. 24, 1925.)

1. Appeal and error ⬡⇒742(6)—Findings binding on reviewing court, where not attacked as unsupported by evidence.

Where propositions of error do not attack findings as unsupported by evidence, are not germane to any assignment of error that does, and relate to no fundamental error, but merely raise questions of law upon assumed facts, findings are binding on appellate court.

2. Banks and banking ⬡⇒116(2)—Bank held not bona fide purchaser of note from insolvent corporation indebted to bank.

Where director of bank was member of creditors' committee managing business of corporation, and bank president was trustee for insurance policies belonging to corporation, while bank carried regular depository accounts for corporation, its president, and such committee, bank was bound to know that corporation was selling contracts for future delivery of seed potatoes while insolvent, and hence could not become bona fide purchaser in due course of note, fraudulently obtained by corporation for one of its contracts, by paying one-fourth of face value through credit on pre-existing debt to bank.

Error from Harris County Court, at Law; Murray B. Jones, Judge.

Action by the Oneida National Bank against Guenard, Speed & Clemens and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Ross & Wood and R. Wayne Lawler, all of Houston, for plaintiff in error.

Boyles, Brown & Scott and Pat N. Fahey, all of Houston, for defendants in error.

GRAVES, J. The findings of fact and conclusions of law of the trial court in this cause are as follows:

"Findings of Fact.

"I. I find that the plaintiff, Oneida National Bank, is a banking corporation duly incorporated under the laws of the United States as a national bank, and that its domicile, residence, and place of business is in the town of Rhinelander, coun-

ty of Oneida, and state of Wisconsin. That the defendants Wm. F. Guenard, John Henry Speed and Fred S. K. Clemens were, at the time of the transaction hereinafter set forth, and are now, copartners under the firm name and style of Guenard, Speed & Clemens, operating and carrying on business under said firm name, and that said named partners comprise all the members of said firm. That the residence and place of business of all of said named defendants, as well as of said copartnership, is in Harris county, Tex.

"II. I find that heretofore, to wit, on or about January 25, 1923, the said defendants made, executed, and delivered to Sunset Farms, under their firm name and style, their certain promissory note in the principal sum of $500, bearing date on the day and year aforesaid; said note being in words and figures substantially as follows:

" 'Houston, Texas, January 25, 1923. No. 4086.

" 'On September 1, 1923, after date, for value received, we promise to pay to the order of Sunset Farms at First National Bank, Houston, Texas, $500.00, five hundred & 00/100 dollars, with interest thereon at the rate of no per cent. per annum until paid.

" 'Guenard, Speed & Clemens,
" 'By F. K. S. Clemens.'

"III. I find that on the 2d day of April, 1923, plaintiff purchased said note from said Sunset Farms several months before its maturity.

"IV. I find that defendants refused to pay said note at maturity, and that same has not been paid.

"V. I find that defendants gave said note as a cash payment under the terms of a contract by and between Sunset Farms, a corporation, and defendants, being a contract of sale and purchase for future delivery of 10 cars of Pure Bred Sunset Brand Red Bliss Triumph seed potatoes, said contract being dated January 24, 1923, whereby said Sunset Farms obligated itself to deliver to defendants 10 cars of such seed potatoes during December, January, and February, 1923 and 1924.

"VI. I find that one Clark G. Kuney was, at the time of the making of said contract, the president of said Sunset Farms, and was the person who executed and negotiated said contract for said Sunset Farms, and to whom said above-described note was delivered for said Sunset Farms.

"VII. I find that in negotiating said sale of seed potatoes, and obtaining said contract and said note, the said Clark G. Kuney, as president of said Sunset Farms, represented to defendants that said Sunset Farms was a solvent concern, responsible on its contracts, and able to fulfill any contracts it might make concerning the sale of seed potatoes.

"VIII. I find that said representation so made by the said Clark G. Kuney, president as aforesaid, was false and fraudulent when made; that it was material to the contract above mentioned. That defendants would not have entered into said contract but for said representation. That said Clark G. Kuney and said Sunset Farms knew when said representation was made that it was false and fraudulent. That said Clark G. Kuney made said representation to induce defendants to enter into said contract. That defendants believed said representation to be true, and relied thereon,

and were induced thereby to make the above-mentioned contract and note.

"IX. I find that immediately upon hearing that said representation was false, and before the negotiation to plaintiff of said above-mentioned note, defendants canceled said contract of sale and purchase above mentioned, and notified said Clark G. Kuney, president as aforesaid, that said contract was canceled, and that said note would not be paid.

"X. I find that at the time said above-mentioned contract was made, and at the time said above-mentioned note was delivered to said Clark G. Kuney and Sunset Farms, and at the time said note was negotiated to plaintiff, said Sunset Farms was not a solvent concern, responsible on its contracts and able to fulfill any contracts it might make concerning the sale of seed potatoes; but that on the contrary, at each and all of said times, said Sunset Farms was being operated by Clark G. Kuney under the direction of a creditor's committee of three, for the creditors of said Sunset Farms, and was not responsible on its contracts nor able to perform them.

"XI. I find that at the time said above-mentioned note was made, executed, and delivered to said Sunset Farms, and at the time the same was purchased by plaintiff, and for several months prior thereto, and since that time, one John J. Reardon was president of plaintiff bank, and a trustee of a certain fund for the benefit of the creditors of said Sunset Farms. That during all of such times one W. D. Juday was a stockholder and director in said plaintiff bank, and a member of the creditor's committee of three above mentioned, and that during all of such time plaintiff bank was one of the creditors of said Sunset Farms, for whom said creditor's committee of three was acting in co-operating in the management of said Sunset Farms. That one R. J. La Selle during all of such time was the cashier of said bank, and was the person who acted for said bank in the purchase of said note, and knew the conditions and circumstances under which said Sunset Farms was being operated. That said R. J. La Selle and the plaintiff bank knew that said Sunset Farms was being operated under a creditor's agreement by a committee of three, through said Clark G. Kuney. That said Sunset Farms was not solvent, nor responsible on its contracts, nor able to perform them. That said R. J. La Selle and plaintiff bank knew that said Sunset Farms was in the business of selling seed potatoes, and not in the business of lending money. That neither said R. J. La Selle nor plaintiff bank ever made inquiry of defendants concerning the validity of said note, nor as to the obligation thereof, nor as to the consideration therefor.

"XII. That in purchasing said note plaintiff bank gave credit to said Sunset Farms on a past-due note of said Sunset Farms owing by it to said plaintiff bank, for the face value of defendants' said note in the sum of $500, and that at the time of the purchase of said note, and the giving of credit as aforesaid, the said note of said Sunset Farms on which credit was given was worth only 25 cents on the dollar.

"XIII. That said Sunset Farms, on July 2, 1923, settled with all its creditors for 25 cents on the dollar.

"XIV. That the above-mentioned note is the

only note ever purchased by plaintiff bank from said Sunset Farms.

"XV. That plaintiff bank had notice at the time of its purchase of said note that it was obtained by fraud, and fraudulently negotiated to it.

### "Conclusions of Law.

"I. I conclude that the note sued on was obtained by Sunset Farms by fraud.

"II. That it was negotiated by the payee Sunset Farms under such circumstance as amounted to fraud.

"III. That at the time of its acquisition of the said note plaintiff bank had knowledge of such facts that its action in taking same amounted to bad faith.

"IV. That plaintiff bank is not a holder in due course of the note sued on, and not entitled to recover thereon."

On the appeal, plaintiff in error bank advances for a reversal the following propositions:

### "First Proposition.

"Misrepresentation of the solvency or financial standing of a corporation by one of its agents or representatives made at the time of, or in the course of, a sale by it for delivery a year hence of some commodity to be grown, produced, or furnished by the corporation is not such fraud as will render void, or amount to a failure of the consideration of, a promissory note given by the purchaser to the corporation as part of an agreed advance payment, where such note has been by the seller indorsed, assigned, and negotiated for a valuable consideration before maturity to a third person; nor does such false representation, however reprehensible, morally furnish a sufficient legal excuse or justification, standing alone, for a repudiation and breach of the contract of sale by the purchaser, nor would such repudiation or breach affect the validity of the note given by the purchaser as an agreed advance payment.

### "Second Proposition.

"The note in question was complete and regular on its face, and was indorsed and negotiated to the plaintiff for a valuable consideration before maturity.

### "Third Proposition.

"The plaintiff took the note in question in good faith without any notice of any infirmity in the instrument or defect in the title of the person negotiating it, and is entitled to recover thereon."

[1] It will be noted that none of these presentments attack as being unsupported by the evidence any of the quoted findings of fact; none are germane to any assignment of error that does; and none relate to fundamental error. On the contrary, they all merely raise questions of law upon assumed facts.

[2] This leaves the facts as so found below binding upon this court, and accordingly, in deciding the appeal, we must assume, among other less important features: (1) That the bank, when buying the note in suit knew (a) that, in the language of the trial court, "it was obtained by fraud and fraudulently negotiated to it;" (b) that the Sunset Farms neither then was, nor at the inception of the note had been, either solvent or able to carry out its contracts, which had to do with the business of selling seed potatoes and not of lending money. (2) That the real consideration paid for the paper, and that by a credit on a pre-existing and past-due debt to the bank, was only one-fourth of its face value.

Obviously, in view of this situation, the plaintiff in error could not have taken the note in good faith without notice either of infirmity in the instrument itself or of defect in the title thereto of its negotiator, notwithstanding the uncontroverted fact that it paid some value therefor before maturity. The legal propositions so ably discussed in its brief clearly, therefore, become wholly academic here.

Before reaching these conclusions, we have taken the trouble to carefully review the entire record, inclusive of the statement of facts, and from that examination are satisfied that the trial court's findings were not unjustified. The undisputed proof is that this creditors' committee were really managing the farm corporation's business for all the creditors through, or in co-operation with, the two Kuneys as the executive officers thereof, and had been so doing since March 8, 1922, nearly a year before this note was given. This bank all the time was not only one of such creditors, but one of its directors was a member of their committee, and its president was serving as trustee for $100,000 of insurance policies belonging to the farms corporation, while at the same time it carried regular depository accounts for the corporation, the president thereof, and this creditors' committee. Sustaining all such intimate relations, the bank was bound to know, as the trial court specifically found, that the farms corporation was engaged in selling contracts for the future delivery of seed potatoes, and that it was at the time of doing so in an insolvent condition, consequently in no position to assure performance thereof. In such circumstances it could not participate in the management of the concern's business and share in the proceeds thereof, as it thus did do, and at the same time become a bona fide purchaser in due course of negotiable paper fraudulently obtained by the corporation in exchange for one of its contracts, by paying therefor through a credit on a pre-existing debt one-fourth of its face value.

It follows that the trial court's judgment should be affirmed. That order will be entered.

Affirmed.